SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

PRINCETON ECONOMICS INTERNATIONAL, LTD., Princeton Global Management, Ltd., and Martin A. Armstrong, Defendants.

Commodity Futures Trading Commission, Plaintiff,

v.

Princeton Economics International, Ltd., Princeton Global Management, Ltd., and Martin A. Armstrong, Defendants.

No. 99 Civ. 9667(RO), 99 Civ. 9669(RO).

United States District Court, S.D. New York.

Dec. 11, 2003.

Martin Armstrong, pro se.

*MEMORANDUM AND ORDER*

OWEN, District Judge.

Martin Armstrong has moved by Notice of Motion dated November 5, 2003, "to vacate the contempt, to reconsider the preliminary injunction and vacate it forthwith as to myself and the corporations, and to stay this proceeding pursuant to 18 USC § 981(g)(2), (g)(B)." This motion is denied in its entirety. Many of the arguments are a rehash of arguments made repeatedly over the years.[1]

---

1. Mr. Armstrong's separately made motion to divest this Court of jurisdiction and transfer the entire case to the Third Circuit is based on his claim that a Republic lawyer in court before me said everything happened in Philadelphia, and following is the quote:

Moreover, Mr. Armstrong's continued assertion that the Court's turnover order under which he is in MCC is a brazen violation of his Fifth Amendment rights is completely answered by *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) at 2295:

> [A] corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating.... Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual.... [T]he Government concedes, as it must, that it may make no evidentiary use of the "individual act" [of production] against the individual.

Thus, (a) Mr. Armstrong is being asked to turn over property, not to provide any testimony; (b) any fact concerning the *production* of demanded items cannot be used against him; and, in addition, (c) the items themselves do not have any arguable personal incriminatory content. The production of such things as gold bars, and rare coins, etc. demanded in this case differs from the production of corporate records, which have been held to be producible notwithstanding the fact that they may contain incriminating content. *Id.* A gold bar is just a gold bar. Accordingly, Mr. Armstrong's motion dated November 5, 2003 is denied.

In addition, while this motion is dated November 5, 2003, I did not receive these motion papers until after a hearing in court on November 7, 2003, at which Martin Armstrong and the Court again addressed his continuing failure to turn over the items in question. Mr. Armstrong's confinement for failure to turn over these items was continued for reasons stated in court at that hearing, I noting that it had been reluctantly but eventually conceded on September 23, 2003 by his criminal lawyer David Cooper, who was present, that, in the Fifth Amendment context, Mr. Armstrong stated to the Court: "My position is I don't have to." (Tr. 62–4, *SEC v. Princeton Econ. Int'l, et al.*, No. 99 CV 9667).

This was reiterated before me on November 7, 2003, and I eventually observed (Tr. 40–2):

> Now, that statement "I don't have to" is virtually a statement I do have it, but I don't have to. And, as I say, you're fighting like a tiger to keep this. Now, at some point, as the Court of Appeals said the last time around, it may be that you're going to decide ["]I've run out of options,["] I'll just see if this is going to go to the circuit, and we'll see. In any event, I am continuing the confinement to endeavor to compel this $15 million to be turned over.

So ordered.

---

In addition, they have 89, maybe the number has gone up recently, compact discs filled with audiotape recordings of phone calls made by the folks at the futures division of Republic securities, Philadelphia branch where all this stuff went on with everybody. So they have that.
(Tr. at 23, *Maruzen v. HSBC, Inc., et. al,* No. 00 Civ. 1079, June 14, 2002). This transcript snippet, however, is rendered of no evidentiary value by the same lawyer's amplification three pages later

The background is this. The nest (sic) ["mess"? see below] the Republic entities that found themselves in that led to the guilty plea in January of this year and the extraordinary restitution order and the payment of nearly $600 million to 51 Japanese entities was a mess at Republic New York securities and its futures division in its Philadelphia office. It came to light publicly in the early fall of 1999.
(Tr. at 26).